IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 27, 2017

**STATE OF TENNESSEE v. ADAM D. LITTLE, ALIAS**

**Appeal from the Criminal Court for Knox County**
**No. 98984     Steven W. Sword, Judge**

_____

**No. E2016-02385-CCA-R3-CD**

_____

The Defendant, Adam D. Little, alias, appeals as of right from the Knox County Criminal Court's revocation of his probation and reinstatement of the remainder of his nine-year sentence for selling less than fifteen grams of heroin within 1,000 feet of a public park. On appeal, the Defendant asserts that the trial court abused its discretion by revoking his probation because the State failed to establish that he violated the law by a preponderance of the evidence. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and ROBERT L. HOLLOWAY, JR., JJ., joined.

Adam M. Elrod, Knoxville, Tennessee, for the appellant, Adam D. Little, alias.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Counsel; Charme P. Allen, District Attorney General; and Kenneth F. Irvine, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
FACTUAL BACKGROUND

On April 18, 2013, the Defendant pled guilty to selling less than fifteen grams of heroin within 1,000 feet of a public park, a Class B felony. See Tenn. Code Ann. § 39-17-417, -432. In exchange for his plea, the Defendant received a nine-year sentence as a Range I, standard offender "to serve" in the Department of Correction, and this sentence was to run concurrently with a prior sentence. A second delivery count was dismissed.

Thereafter, a violation of probation affidavit and warrant were filed against the Defendant on August 17, 2016. Specifically, it was alleged therein that the Defendant violated the conditions of his probation by failing "to obey the law" as a result of his August 14, 2016 arrest in Knox County for simple possession and by failing to report that charge to his probation officer.

At the November 3, 2016 revocation hearing, Lieutenant Tony Willis with the Knoxville Police Department ("KPD") testified that he had been with the KPD for almost twenty-one years and that a large portion of his career had been devoted to working narcotics investigations. On August 14, 2016, Lt. Willis assisted with a 12:34 a.m. traffic stop on James Avenue near Wallace Street in Knoxville. Lt. Willis approached the passenger side of the vehicle and encountered the Defendant. Lt. Willis described the Defendant as "very cooperative" during the traffic stop.

After approaching the passenger side, Lt. Willis immediately saw "a plastic cellophane baggie tied in a knot that appeared to contain a narcotic substance" in the Defendant's lap. At Lt. Willis's request, the Defendant handed him the bag. Lt. Willis then performed a "comparison of the [pills'] physical qualities," like its markings, color, and size, and determined that the three pills inside the bag were oxymorphone, a Schedule II controlled substance. According to Lt. Willis, he had performed this type of analysis "many times in the past" and could not ever recall "a discrepancy" between his field analysis and subsequent laboratory testing.

On cross-examination, Lt. Willis confirmed that he was "not a chemist" and had "not done a chemical analysis of any substance in [his] career[.]" Lt. Willis believed that the substance in this case was sent to the laboratory for testing, but he had not seen any report confirming that the pills were oxymorphone. Lt. Willis further testified that he had never seen any counterfeit oxymorphone.

Lt. Willis reiterated that, in his twenty-one years' experience, the substance he took from the Defendant "was verified with the physical properties described by the manufacturer on the website, it physically was consistent with the appearance, the shape, the size, of oxymorphone." He confirmed that he "pulled up" the manufacturer's website from the internet to perform this comparison. Moreover, in Lt. Willis's opinion, it was not common "for someone to have in their possession pills wrapped up in a cellophane baggie tied in a knot with altruistic purposes in mind." Lt. Willis verified that he "had input" in generating a warrant for the Defendant's arrest based upon the Defendant's possession of these three oxymorphone pills.[1]

---

[1] According to defense counsel, this warrant was dismissed for failure to prosecute.

Lt. Willis agreed that he had a brief conversation with the Defendant during the traffic stop. However, Lt. Willis was not privy to the conversation that the Defendant had "with a couple of other officers" because Lt. Willis was occupied "doing the pill identification." Additionally, Lt. Willis could not recall whether he asked the Defendant if the pills belonged to him or if the Defendant ever admitted that the pills were his. However, Lt. Willis averred that, when he approached the vehicle, the pills were "in [the Defendant's] lap, and [the Defendant's] lap alone."

The Defendant testified in his own defense. The Defendant stated that he was released from the penitentiary in October 2013, after he completed "boot camp," so he had been on probation for approximately three years. According to the Defendant, his probation had gone "[v]ery well" up until his August 14, 2016 arrest. The Defendant claimed that he maintained gainful employment, regularly paid his fines, court costs, and fees, and kept his appointments with his probation officer.

According to the Defendant, he worked from six in the morning until noon on August 14, 2016. After getting off work, he went to his mother's house and then later to his girlfriend's house. However, as a condition of his probation, he was required to live with his mother, so around midnight that evening, the Defendant's cousin, Demetrius Taylor, picked the Defendant up to give the Defendant a ride back to his mother's house. The Defendant testified that Mr. Taylor did not take him immediately home, instead taking a detour through Mechanicsville to visit one of Mr. Taylor's friends. The Defendant claimed that he did not have any other choice but to ride with Mr. Taylor because it was about an hour walk home from his girlfriend's house.

While driving through Mechanicsville, they were stopped by the police, but they were not doing anything wrong, according to the Defendant. The Defendant testified that, when the police car's blue lights were activated, Mr. Taylor pulled out a bag and placed it in the Defendant's lap. The Defendant maintained that he had no knowledge of this bag prior to this time. According to the Defendant, he handed the bag back to Mr. Taylor and told Mr. Taylor that he had "to take his own charge."

The Defendant testified that Mr. Taylor asked the officer why they had been stopped, and the officer said something "to the effect of he [had] seen the car earlier that day." It was then that Lt. Willis walked up to the passenger side of the car and asked the Defendant what was in his lap. The Defendant said he responded, "My cigarettes, my lighter, and my phone." When Lt. Willis probed, "No. What's in the bag?" the Defendant was very surprised that the bag was still in his lap. The Defendant said that he did not know what was in the bag when he handed it to Lt. Willis. According to the Defendant, he told Lt. Willis that the pills did not belong to him, but he did not convey this same information to any of the officers that he spoke with on the scene.

-3-

On cross-examination, the Defendant acknowledged that he had been arrested for possession of drug paraphernalia and possession of "legend drugs" on October 30, 2014. However, the Defendant claimed that the charges were dismissed because he had a prescription for the drugs, which he thought were hydrocodone pills. According to the Defendant, he was prescribed the pain pills following a car wreck. Additionally, the Defendant did not recall being charged with several driving offenses on November 6, 2014—those offenses being listed as driving while his license was suspended, leaving the scene of an accident, and failing to show proof of insurance. The Defendant also did not remember being arrested for driving without a license on November 8, 2014, and pleading guilty to that charge or pleading guilty to driving without a license on January 10, 2015.

According to the Defendant, when Lt. Willis queried about the bag in the Defendant's lap, the Defendant looked at Mr. Taylor, and Lt. Willis noticed him looking at Mr. Taylor. Lt. Willis then got the Defendant out of the car and said, "I kind of know what's going on." The Defendant was asked what he saw when he looked down in his lap the second time after being questioned by Lt. Willis: "I see a small bag. [Mr. Taylor] handed me one bag, and it could have been that bag inside another bag, and I handed it back to him. So it could have fell out [of] the bag on my lap." The Defendant then assented "that the couple of pills that [he] got caught with may [have] only be[en] part of what was there[.]"

On redirect, the Defendant acknowledged that he had a series of driving offenses in late 2014 through early 2015. He averred that he was only driving to work, but he claimed that he stopped doing that when he kept getting cited for it.

Following the hearing, the trial court found that the Defendant had violated his "boot camp release" and ordered the Defendant to serve the balance of his nine-year sentence in confinement. In rendering its decision, the trial court reasoned as follows:

> Well, the [c]ourt doesn't find [the Defendant's] story to be credible. . . . . Lieutenant Willis found the pills in his lap. . . . I don't have any doubt whatsoever that these were oxymorphone. . . . These pills when they're stamped, they're not—it's not like we're just saying this is a white oval pill. They actually have numbers and—they can tell exactly what manufacturer it was based upon the stamps, and Lieutenant Willis has testified that he's got a lot of experience in identifying these, and so I have no doubt they are what they were, plus, they were packaged for resale.
>
> The [D]efendant's defense in this is, is that he wasn't knowingly possessing this, and that it belonged to another person. Again, the [c]ourt doesn't find him credible in that. If this were a situation where he was on

-4-

probation—or received probation in the beginning and this was his first violation here, I would certainly consider something alternative to sending him back to the penitentiary, but he took a sentence to serve on a [C]lass B felony. I think it was heroin that we're dealing with originally. . . . I don't think he learned anything in boot camp.

The Defendant filed a timely notice of appeal.

ANALYSIS

The Defendant contends that the trial court abused its discretion when it determined that he violated the law by a preponderance of the evidence. Specifically, the Defendant notes that "the State did not present any evidence or testimony showing that the Defendant had any reason to have been aware of the baggie of pills before Mr. Taylor placed it in the Defendant's lap," that the pills were actually oxymorphone, or "that the Defendant had any basis to know what the pills inside the closed baggie were." The State responds that the trial court properly exercised its discretion in revoking the Defendant's probation and ordering him to serve the remainder of his nine-year sentence in confinement. The State asserts, "because there was substantial evidence to support the trial court's findings, the trial court properly found that the [D]efendant had violated the terms of his probation by being arrested on new charges."

A trial court may revoke a sentence of probation upon finding by a preponderance of the evidence that the defendant has violated the conditions of his release. Tenn. Code Ann. § 40-35-311(e). If the trial court revokes the probation, it has the right to "extend the defendant's period of probation supervision for any period not in excess of two (2) years," "commence the execution of the judgment as originally entered," or "[r]esentence the defendant for the remainder of the unexpired term to any community-based alternative to incarceration." Tenn. Code Ann. §§ 40-35-308(c), -35-311(e). In a probation revocation hearing, the credibility of the witnesses is determined by the trial court. State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991).

Furthermore, the decision to revoke probation is in the sound discretion of the trial judge. State v. Kendrick, 178 S.W.3d 734, 738 (Tenn. Crim. App. 2005); Mitchell, 810 S.W.2d at 735. The judgment of the trial court to revoke probation will be upheld on appeal unless there has been an abuse of discretion. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). To find an abuse of discretion in a probation revocation case, "it must be established that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." Id. (citing State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978); State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)); see also State v. Farrar, 355 S.W.3d 582, 586 (Tenn. Crim. App. 2011). Such a finding "'reflects that the trial court's logic and reasoning was

improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" State v. Shaffer, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting State v. Moore, 6 S.W.3d 235, 242 (Tenn. 1999)).

In order to establish a violation of a suspended sentence based on the commission of a new offense, the State must offer proof by a preponderance of the evidence showing that a defendant violated the law. See State v. Catherin Vaughn, No. M2009-01166-CCA-R3-CD, 2010 WL 2432008, at *3 (Tenn. Crim. App. June 14, 2010) (noting that proof of a conviction is not necessary). Moreover, this court has previously held that a trial court may premise a revocation upon proven allegations of a violation warrant, even if the charges have been dismissed. State v. Delp, 614 S.W.2d 395, 396-97 (Tenn. Crim. App. 1980) (concluding that revocation may be based upon criminal acts alleged in the violation warrant even though the defendant was acquitted of charges for the underlying acts); State v. Agee Gabriel, No. M2002-01605-CCA-R3-CD, 2004 WL 1562551, at *3 (Tenn. Crim. App. July 12, 2004) (holding that "validity of the original warrant was not affected by the dismissal of the criminal charges arising from the acts alleged in the warrant"); State v. Larry D. Turnley, No. 01C01-9403-CR-00094, 1994 WL 714227, at *3 (Tenn. Crim. App. Dec. 22, 1994) ("The fact that the [d]efendant was not convicted of any of the offenses with which he was charged does not mandate dismissal of the probation violation warrant."). However, the State "must present sufficient facts at the revocation hearing to enable the trial court to 'make a conscientious and intelligent judgment as to whether the conduct in question violated the law.'" State v. Jason L. Holley, No. M2003-01429-CCA-R3-CD, 2005 WL 2874659, at *4 (Tenn. Crim. App. Oct. 25, 2005) (quoting Harkins, 811 S.W.2d at 83 n.3).

Lt. Willis testified that he assisted with the traffic stop involving the Defendant on August 14, 2016. Upon approaching the passenger side of the vehicle, he observed "a plastic cellophane baggie tied in a knot that appeared to contain a narcotic substance" in the Defendant's lap. According to Lt. Willis, the bag was "in [the Defendant's] lap, and [the Defendant's] lap alone." Lt. Willis, relying on his twenty-one years' experience as a law enforcement officer, further testified that it was not common "for someone to have in their possession pills wrapped up in a cellophane baggie tied in a knot with altruistic purposes in mind." On the scene, Lt. Willis examined the three pills inside the bag, compared them to the manufacturer's website, and determined that they were "physically . . . consistent with the appearance, the shape, the size, of oxymorphone."

The trial court found the Defendant's explanation for possessing the pills to be unbelievable. Again, the credibility of the witnesses is determined by the trial court, see Mitchell, 810 S.W.2d at 735, and this finding is certainly supported by the record. According to the Defendant, Mr. Taylor did nothing wrong before he was stopped by the police. The Defendant believed that he had performed "[v]ery well" on probation despite

his arrests for drug possession, which included possession of drug paraphernalia, and his convictions for multiple driving offenses. Additionally, the Defendant even acquiesced "that the couple of pills that [he] got caught with may [have] only be[en] part of what was" in the vehicle that evening, even though no other pills were found.

We disagree with the Defendant that Lt. Willis's testimony was insufficient to establish that the Defendant had control over the bag, that the pills were in fact oxymorphone, or that the Defendant knew he possessed a controlled substance. This court has previously concluded that a police officer's testimony about the facts surrounding the arrest used as the basis for the violation "constituted substantial evidence" and was "sufficient to support the trial court's [revocation of a suspended sentence]." State v. Jeremy Bo Eaker, No. M2013-01639-CCA-R3-CD, 2014 WL 546348, at *5 (Tenn. Crim. App. Feb. 11, 2014) (quoting State v. Chris Allen Dodson, M2005-01776-CCA-R3-CD, 2006 WL 1097497, at *3 (Tenn. Crim. App. Mar. 31, 2006)) (concluding that officer's testimony "was straight-forward: upon executing a traffic stop, he found [the defendant] in possession of drug paraphernalia and a white powder, which he stated, based upon his experience as a law enforcement officer and as a drug task force agent, appeared to be methamphetamine[,]" and provided a sufficient basis for revoking probation).

The trial court was within its discretion to determine that the Defendant violated the conditions of his probation by a preponderance of the evidence. Lt. Willis's testimony alone established that the Defendant violated the law. Thereafter, it was within the trial court's authority to order the Defendant to serve the balance of his previously imposed nine-year sentence in confinement upon revoking the Defendant's probation. See Tenn. Code Ann. §§ 40-35-310, -311(e); see also Mitchell, 810 S.W.2d at 735.

<u>CONCLUSION</u>

Upon consideration of the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
D. KELLY THOMAS, JR., JUDGE